IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:13-CR-80-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| EDGAR PARRAL-DOMINGUEZ, | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court for sentencing on July 8, 2014, upon defendant's March 11, 2014, guilty plea, without a written plea agreement, to illegal re-entry of an aggravated felon on December 30, 2010, in violation of 8 U.S.C. § 1326(a). This memorandum opinion memorializes the reasoning for the court's overruling defendant's objection to the presentence report ("PSR") prepared by the United States Probation Office.

The court commenced at hearing to determine the advice of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), a tool implemented by Congress to suggest an appropriate sentence based primarily on the severity of the defendant's criminal conduct and the extent of his previous criminal history. The court may accept any undisputed portion of the PSR prepared by the United States Probation Office as a finding of fact in establishing the Guidelines range, must decide any objection bearing on the advisory Guidelines, and has substantial discretion to impose a sentence above or below the advisory range if such a sentence is necessary to accomplish the goals of sentencing.

In the PSR, probation calculated defendant's criminal history category as a IV. Probation next calculated a base offense level of eight, pursuant to U.S.S.G. § 2L1.2(a), and recommended the

court apply a sixteen (16) level enhancement to the defendant's offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), for having been previously deported or unlawfully remaining in the United States after a conviction for a crime of violence. The prior conviction upon which this recommendation was based was defendant's prior conviction for discharging a weapon into an occupied property, in violation of N.C. Gen. Stat. § 14-34.1(a). Probation also recommended a three level decrease to the total offense level for acceptance of responsibility, resulting in a total offense level of 21. The resultant recommended Guideline range of imprisonment was fifty-seven (57) to seventy-one (71) months.

Defendant objected to the sixteen (16) level enhancement, asserting that his prior conviction for discharging a weapon into an occupied property was not a crime of violence within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii), but rather only qualified as an "aggravated felony" for which an eight level increase is appropriate pursuant to U.S.S.G. § 2L1.2(b)(1)(C).[1]

The statute that defines the offense of defendant's prior conviction, N.C. Gen. Stat. § 14-34.1(a), provides that

> [a]ny person who willfully or wantonly discharges or attempts to discharge any firearm or barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class E felony.

The Guidelines provide that "[i]f the defendant previously was deported, or unlawfully remained in the United States, after -- (A) a conviction for a felony that is . . . (ii) a crime of violence . . . increase [defendant's offense level] by 16 levels. . . ." U.S.S.G. § 2L1.2(b)(1). For purposes of

---

[1] U.S.S.G. § 2L1.2(b)(1)(C) provides that if a defendant previously was deported or unlawfully remained in the United States after a conviction for an aggravated felony, the court should increase the offense level by eight levels. This enhancement does not apply if the above-referenced section 2L1.2(b)(1)(A)(ii) enhancement applies.

2

section 2L1.2,

> "[c]rime of violence" means any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, *or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another*.

U.S.S.G. § 2L1.2 cmt. n.1.B.(iii) (emphasis added).

To determine if defendant's conviction for discharging a weapon into an occupied property is a crime of violence for purposes of section 2L1.2, this court is to use the categorical approach. Descamps v. United States, 133 S. Ct. 2276, 2283 (2013). This means the court is to "look only to the statutory definitions – *i.e.*, the elements – of [the] defendant's prior offenses, and not to the particular facts underlying those convictions." Id.[2]

There is no governing Fourth Circuit authority determining whether a violation of N.C. Gen. Stat. § 14-34.1(a) – or an analogous statute – is a crime of violence for purposes of U.S.S.G. § 2L1.2. In United States v. Gutierrez, --- F. App'x ----, 2014 WL 1688678 (4th Cir. 2014), however, the Fourth Circuit examined the propriety of the application of section 2L1.2's crime of violence enhancement to a defendant who was previously deported after a conviction for violating Cal. Penal Code § 246. Cal. Penal Code § 246 proscribes "maliciously and willfully discharg[ing] a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, as defined in Section 362 of the Vehicle Code, or inhabited camper, as defined

---

[2] Where a statute is "divisible," that is, where it has alternative elements and some alternatives would be a crime of violence and others would not, courts may be permitted to use what is termed the "modified categorical approach" in which they look beyond statutory elements to the charging paper and jury instructions used in the case. Descamps, 133 S.Ct at 2283-84. Here, neither party suggested that use of the modified categorical approach is appropriate. Moreover, no charging documents or jury instructions were submitted into the record.

3

in Section 243 of the Vehicle Code." The Gutierrez court held that it "need not resolve whether the district court erred by treating Gutierrez's California conviction as a crime of violence, however, because, even if it did err, Gutierrez cannot establish that the error was plain." Gutierrez, 2014 WL 1688678, at *3. Thus, the Fourth Circuit has not explicitly established whether a crime such as a violation of N.C. Gen. Stat. § 14-34.1(a) may properly serve as grounds for the sixteen (16) level enhancement at issue in this case.

Other circuits addressing this issue have reached varying results. In United States v. Alfaro, 408 F.3d 204 (5th Cir. 2005), the Fifth Circuit held that it was plain error for the district court to have applied this sixteen (16) level enhancement using as a predicate offense Va. Code § 18.2-279. That statute provides, in relevant part, "[i]f any person . . . maliciously shoots at . . . any dwelling house or other building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending shall be guilty of a Class 4 felony." Va. Code § 18.2-279. The Alfaro court held that this statute lacked the use, attempted use, or threatened use of force against another, reasoning that "a defendant could violate this statute merely by shooting a gun at a building that happens to be occupied without actually shooting, attempting to shoot, or threatening to shoot another person." 408 F.3d at 209.

In United States v. Jaimes-Jaimes, 406 F.3d 845 (7th Cir. 2005), the Seventh Circuit held that the district court plainly erred in finding that a conviction under Wis. Stat. § 941.20(2)(a) was a crime of violence under U.S.S.G. § 2L1.2. The court described the elements of that statute as follows: "the defendant (1) discharged a firearm; (2) intentionally shot the gun into a building (or vehicle); and (3) should have realized that there might be a human being present in the building (or vehicle)." Jaimes-Jaimes, 406 F.3d at 849. The court held that because "the state need not prove

4

that another person was present in the vehicle or building, or even anywhere near the targeted object" but rather, "given the elements of the offense" need only "prove that the defendant should have realized that there *might* be a person present," the statute did not require the state to show force be directed "against the person of another" as required for the offense to be a "crime of violence" under U.S.S.G. § 2L1.2. Id. at 850.

In United States v. Cortez-Arias, 403 F.3d 1111 (9th Cir. 2005), the Ninth Circuit reached a different conclusion, affirming the application of the sixteen (16) level section 2L1.2(b)(1)(A)(ii) enhancement where Cal. Penal Code § 246 was the predicate offense. The Cortez-Arias court described the elements of Cal. Penal Code § 246 as follows: "(1) a malicious and willful state of mind, (2) the discharge of a firearm, (3) at an inhabited dwelling house, meaning a house in which a person currently and permanently lives." Cortez-Arias, 403 F.3d at 1115. Notably, the "inhabited dwelling" did not need to be occupied at the time of the shooting. Id. at 1115. The court determined, however, that "[a] person whose home is shot up by an instrument of deadly force . . . will surely feel threatened by the physical force that has intruded on his or her home." Id. at 1116. Thus, the court held that "shooting at an inhabited dwelling is a crime of violence under USSG § 2L1.2 because it always threatens the use of force against another person." Id. at 1116 n.3.

In United States v. Martinez-Martinez, 468 F.3d 604 (9th Cir. 2006), however, the Ninth Circuit held that a violation of a similar Arizona statute was not a crime of violence under section 2L1.2. The statute at issue in Martinez-Martinez provided that a "person who knowingly discharges a firearm at a residential structure is guilty of a class 2 felony." Ariz. Rev. Stat. § 13-1211. The statute defined "residential structure" as "a movable or immovable or permanent or temporary structure that is adapted for both human residence or lodging." Id. It defined "structure" as "any

5

building, vehicle, railroad car or place with sides and a floor that is separately securable from any other structure attached to it and that is being used for lodging, business or transportation." Id. The Martinez-Martinez court distinguished its case from Cortez-Arias where the Arizona statute only required that the structure be *suitable* for human residence and there was no requirement that the structure actually be occupied. Id. at 613. The court noted, however, that the "existence of a present occupant to the structure attacked . . . would have all the hallmarks we held in *Cortez-Arias* as making the offense one where there is a threat of force to the person of another." Id. at 610.

The court turns now directly to the question of whether a violation N.C. Gen. Stat. § 14-34.1(a) is a crime of violence for purposes of U.S.S.G. § 2L1.2. As stated above, section 14-34.1(a) provides that

> [a]ny person who willfully or wantonly discharges or attempts to discharge any firearm or barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class E felony."

N.C. Gen. Stat. § 14-34.1(a). Where "the statutory definition of the prior offense has been interpreted by the state's highest court, that interpretation constrains [the court's] analysis of the elements of state law." United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014). With respect to N.C. Gen. Stat. § 14-34.1(a), the North Carolina Supreme Court has held that

> a person is guilty of the felony created by G.S. s 14-34.1 if he intentionally, without legal justification or excuse, discharges a firearm into [a]n occupied building with knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons.

State v. Williams, 284 N.C. 67, 73 (1973).

Thus, although this statute does not require the structure fired at be a place where someone

6

permanently lives – as the statute at issue in Cortez-Arias did – it does require both that it actually be occupied, and that the defendant have reasonable ground to believe it might be occupied. Where one reasonably should know a building or vehicle might be occupied, the act of shooting that building or vehicle would threaten any inhabitants therein. The occupants of the building "will surely feel threatened by the physical force that has intruded." Cortez-Arias, 403 F.3d at 1116. Accordingly, the court held that defendant's violation of N.C. Gen. Stat. § 14-34.1(a) was a crime of violence and overruled his objection.

Defendant, relying on Jaimes-Jaimes, argued that because this statute does not require that the defendant know a building is occupied but rather that the defendant have "reasonable grounds to believe that the building might be occupied by one or more persons," Williams 284 N.C. at 73, that it does not require a showing of use of force against another person. The court, however, does not find persuasive the reasoning in Jaimes-Jaimes. Where a defendant reasonably believes a building very well may be occupied and nevertheless shoots into it, this action constitutes a threat of force against the persons therein. Furthermore, N.C. Gen. Stat. § 14-34.1(a) has an important difference from the Wisconsin statute analyzed by Jaimes-Jaimes, in that N.C. Gen. Stat. § 14-34.1(a) requires that the building actually be occupied. Thus, a defendant is only exposed to criminal liability under N.C. Gen. Stat. § 14-34.1(a) if persons are inside the building fired into.

The court also notes that numerous Fourth Circuit decisions have held that offenses similar to a violation of N.C. Gen. Stat. § 14-34.1(a) are crimes of violence for purposes of the Career Offender Guideline at U.S.S.G. § 4B1.1. See, e.g., United States v. Ross, 416 F. App'x 289, 291 (4th Cir. 2011); United States v. Mason, 392 F. App'x 171, 173 (4th Cir. 2010); United States v. Horton, No. 91-5766, 1991 WL 186865, at *2 (4th Cir. Sept. 24, 1991). However, the definition of

7

"crime of violence" for purposes of the Career Offender Guideline differs in a small but significant way from the definition of a "crime of violence" for purposes of the instant enhancement. For purposes of the Career Offender Guideline a crime of violence is one punishable by more than a year that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." U.S.S.G. § 4B1.2(a) (emphasis added).

The above emphasized language does not appear in the definition of a crime of violence for purposes of the instant enhancement. See U.S.S.G. § 2L1.2 cmt. n.1.B.(iii). Thus, where the Fourth Circuit has held that convictions analogous to a conviction under N.C. Gen. Stat. § 14-34.1(a) are crimes of violence for purposes of the career offender enhancement because they entail conduct presenting a serious potential risk of physical injury, such cases are distinguishable. See Ross, 416 F. App'x at 291; Mason, 392 F. App'x at 173; Horton, 1991 WL 186865, at *2.

The court notes, however, that in United States v. Wilkerson, 492 F. App'x 447 (4th Cir. 2012), the Fourth Circuit held that "discharge of a firearm into an occupied vehicle, was properly counted as a crime of violence because it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Id. at 449 (quoting U.S.S.G. § 4B1.2 cmt. n.1). Both the Career Offender Guideline and U.S.S.G. § 2L1.2 provide that an offense is a crime of violence if is "'has as an element the use, attempted use, or threatened use of physical force against the person of another." See U.S.S.G. § 4B1.2(a)(1); U.S.S.G. § 2L1.2 cmt. n.1.B.(iii). The reasoning in Wilkerson therefore suggests that a violation of N.C. Gen. Stat. § 14-34.1(a) is a crime of violence for purposes of U.S.S.G. § 2L1.2.

Based upon the foregoing, the court held that defendant's conviction for discharging a weapon into an occupied property, in violation of N.C. Gen. Stat. § 14-34.1(a), was a conviction for a crime of violence for purposes of U.S.S.G. § 2L1.2. Accordingly, the court overruled defendant's objection and found application of the sixteen (16) level enhancement for having been previously deported or unlawfully remaining in the United States after a conviction for a crime of violence, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), to be proper. Reference is made more particularly to the record developed upon sentencing hearing, for all of the matters considered in determination that defendant be imprisoned for a term of sixty-five (65) months, which sentence, coupled with other conditions enunciated at sentencing, accomplishes the purposes of sentencing.

This the 9th day of July, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge